1  Anthony J. Dain (Bar No. 98947)
   Victor M. Felix (Bar No. 179622)
2  PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
   530 B Street, Suite 2100
3  San Diego, California 92101
   Telephone: 619.238.1900
4  Facsimile: 619.235.0398

5  Attorneys for Defendants and Counterclaimants
   Kyocera International, Inc., and Wireless Corp.
6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10 JENS ERIK SORENSEN, as Trustee of          Case No.: 08 CV 0411 BTM (CAB)
   SORENSEN RESEARCH AND DEVELOPMENT
11 TRUST,                                      **NOTICE OF LODGMENT IN
                                               SUPPORT OF KYOCERA'S MOTION
12              Plaintiff,                      TO STAY PENDING OUTCOME OF
                                               REEXAMINATION PROCEEDINGS**
13 v.
                                               Date:     May 2, 2008
14 KYOCERA INTERNATIONAL, INC., a California   Time:     11:00 a.m.
   corporation; KYOCERA WIRELESS CORP., a      Ctrm:     15
15 Delaware corporation; and DOES 1-100,       Judge:    Hon. Barry Ted Moskowitz

16              Defendants.

17 KYOCERA INTERNATIONAL, INC., a California   NO ORAL ARGUMENT UNLESS
   corporation; KYOCERA WIRELESS CORP., a      REQUESTED BY THE COURT
18 Delaware corporation,

19              Counterclaimants,

20 v.

21 JENS ERIK SORENSEN, as Trustee of
   SORENSEN RESEARCH AND DEVELOPMENT
22 TRUST,

23              Counterdefendant.

24

25      Defendants and Counterclaimants Kyocera International, Inc. and Kyocera Wireless Corp.

26 (collectively, "Kyocera") respectfully lodge the following Exhibits in support of their Motion to

27 Stay:

28      Exhibit 1:    True   and   correct   copy   of   a   September   10,   2007   Opinion

1     Memorandum/Order staying the litigation in the case entitled *Sorensen v.*

2     *Black & Decker, et al.*, USDC for the Southern District Of California Case

3     No. 06CV1572 BTM (CAB) [Doc. #243];

4     Exhibit 2:     True and correct copy of the PTO's grant of Black & Decker's Request for

5     Reexamination dated October 11, 2007 (Application/Control Number

6     90/008,775);

7     Exhibit 3:     True and correct copy of the PTO's grant of Phillips Plastic's Request for

8     Reexamination dated February 21, 2008 (Application/Control Number

9     90/008,976);

10    Exhibit 4:     True and correct copy of a January 16, 2008 Opinion Memorandum/Order

11    staying the litigation in the case entitled *Sorensen v. Digital Networks*

12    *North America, Inc.,* USDC for the Northern District Of California Case

13    No. C 07-05568 JSW, [Doc. # 39], and;

14    Exhibit 5:     True and correct copy of a PTO publication entitled "Ex Parte

15    Reexamination Filing Data," dated June 30, 2006.

16    Exhibit 6:     True and correct copy of H.R. Rep. No. 96-1307, Part 1 (1980), reprinted

17    in 1980 U.S.C.C.A.N., pp. 6460-6463.

18

19    DATED:  March 24, 2008               PROCOPIO CORY HARGREAVES
                                           & SAVITCH LLP
20

21
                                           By:_s/Victor M. Felix_____
22                                             Attorney for Defendants and
                                               Counterclaimants
23                                             E-mail: vmf@procopio.com

24

25

26

27

28

2

Case No. 08CV0411 BTM (CAB)

109934/000230/897286.01

# EXHIBIT "1"

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>                                  Plaintiff,<br><br>vs.<br><br><br><br><br><br>THE BLACK AND DECKER CORPORATION, et al.<br><br>                                  Defendants. | CASE NO. 06cv1572 BTM (CAB)<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF DENIAL OF OBJECTIONS TO MAGISTRATE JUDGE'S ORDER OF APRIL 9, 2007 AS MOOT [Doc. #163];**<br><br>**(2) GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 20, 2007 ORDER RE BIFURCATION [Doc. #171];**<br><br>**(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY [Doc. #178];**<br><br>**and**<br><br>**(4) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS PREMATURE [Doc. #204]** |

**I.      Motion for Reconsideration of Denial of Objections to Magistrate Judge's Order**

On April 9, 2007, Magistrate Judge Bencivengo issued an order in which she granted in part and denied in part Plaintiff's motion to compel further responses to discovery. In accordance with 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), Plaintiff filed an

1  objection to that ruling, arguing that it was both clearly erroneous and contrary to law.  In an
2  order entered June 14, 2007, the Court overruled Plaintiff's objection without prejudice.  The
3  Court found that the Magistrate Judge's determinations regarding the Black & Decker
4  Defendants' waiver of the attorney-client privilege, and the applicability of Patent Local Rule
5  2.5(d), were neither clearly erroneous nor contrary to law, on the record before the Court.
6  However, the Court was unable to determine at that time whether, and to what extent, the
7  Black & Decker Defendants ("B&D") intended to rely upon the death of Dennis Dearing to
8  provide the requisite showing of prejudice in support of any laches and/or equitable estoppel
9  defenses.  Therefore, Plaintiff was granted leave to serve an interrogatory upon B&D, which
10 stated: "Set forth, in detail, all prejudice to Defendants that resulted from the death of Dennis
11 Dearing in regard to this case."  To the extent Plaintiff believed that B&D's response to the
12 interrogatory indicated that this Court's determination regarding waiver of the attorney-client
13 privilege was in error, it was invited to move for reconsideration of the decision at that time.

14      On July 11, 2007, B&D responded to Plaintiff's interrogatory setting forth the prejudice
15 that resulted from the death of its former in-house counsel Dennis Dearing.  The prejudice
16 identified included the inability to have Mr. Dearing testify regarding his communications in
17 the mid-1990s pertaining to Mr. Jens Ole Sorensen's claims of infringement of the '184
18 Patent.  These communications included discussions directly with Mr. Sorensen and his
19 representatives, as well as with John Schiech, Black & Decker's business manager
20 responsible for making all decisions concerning the matter.  B&D also indicated that it was
21 prejudiced because it could not present Mr. Dearing as a witness to defend against Plaintiff's
22 charge of willful infringement.

23      On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous
24 ruling on the basis of the new evidence presented in B&D's interrogatory response.  The
25 motion was calendared for hearing, without oral argument, on August 10, 2007.  However,
26 while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling
27 in light of B&D's interrogatory response.  On August 3, 2007, Judge Bencivengo issued her
28 "Order Following Discovery Conference on July 26, 2007" in which she ruled:

06cv1572

1
2      Since the defendant is affirmatively relying upon the death of Mr. Dearing to
       support its defense of laches, the plaintiff is entitled to review Mr. Dearing's
3      files that still exist and reflect his personal thoughts and impressions, so
       plaintiff may respond to defendant's claim of lost evidence.  Defendant was
4      therefore ordered to produce any withheld documents reflecting Mr.
       Dearing's work product on this matter.

5    [Doc. #177 at ¶ 8.]  Judge Bencivengo stayed production of Mr. Dearing's work product for

6    30 days in order to give B&D an opportunity to appeal the order.  B&D has just taken that

7    opportunity and filed a motion for reconsideration on September 4, 2007 [Doc. #240].  B&D's

8    motion is calendared for hearing by this Court on November 2, 2007.

9          In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's

10   privileged documents, and the now-pending motion for reconsideration of that order, the

11   Court finds moot Plaintiff's motion for reconsideration of its previous order overruling

12   Plaintiff's objection to Judge Bencivengo's April 9, 2007 order.  The Court finds that this

13   entire issue will be addressed, upon a complete and updated record that includes Judge

14   Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B&D's pending

15   motion for reconsideration.  Accordingly, Plaintiff's motion is **DENIED** without prejudice as

16   moot.

17

18   **II.     Motion for Reconsideration of Bifurcation**

19         On June 13, 2007, the Court held a hearing on B&D's motion for summary judgment

20   of laches.  The Court denied B&D's motion at that hearing and discussion then ensued over

21   the possibility of setting an expedited bench trial on B&D's equitable defenses of laches and

22   estoppel.  At B&D's urging, the Court and the parties agreed to schedule this bench trial

23   beginning on December 17, 2007.  In a June 20, 2007 written order confirming the Court's

24   decision from the June 13 hearing, the Court explained that the trial of equitable defenses

25   could be bifurcated from the rest of the trial proceedings relating to infringement.  [Doc. #147

26   at 2-3.]  Citing the Ninth Circuit case of Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir.

27   2001), the Court explained that, in deciding these equitable defenses, it would need to

28   determine whether there has been any showing of willful infringement on the part of

3

06cv1572

1  Defendants that would act as a "counterdefense" to laches. The Court invited any party to

2  make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial

3  if they felt that the Court's determination of the willfulness issue presented a problem for any

4  subsequent jury trial proceedings.

5        On July 20, 2007, B&D accepted the Court's invitation and filed a motion for

6  reconsideration of bifurcation. [Doc. #171.] B&D explained that it had not appreciated that

7  the Court itself would need to make a finding on willfulness, without the aid of a jury, in any

8  bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its

9  full rights to a jury determination on willfulness, B&D withdrew its request for an expedited

10  bench trial on its equitable defenses.

11        Plaintiff has opposed B&D's motion for reconsideration arguing that there is no

12  authority establishing any right to a jury trial on willfulness and, to the extent such a right

13  exists, B&D has waived its rights by continually requesting that the Court schedule a short

14  bench trial on laches before proceeding with the rest of the action.

15        The Court finds that the right to a jury trial on willfulness exists in a patent action that

16  will be tried to a jury. See, e.g., Richardson v. Suzuki Motor Co., 886 F.2d 1226, 1250 (Fed.

17  Cir. 1989). Having considered the submissions of the parties and the record of these

18  proceedings, the Court does not find that B&D has knowingly waived its right to a jury trial

19  on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by

20  this Court in an effort to accommodate B&D's request for an early determination of laches,

21  which it argued, if found, would greatly expedite the conclusion of this matter. Having

22  recognized that a laches determination requires that this Court determine, before any jury

23  has considered the question, whether Defendants willfully infringed Plaintiff's patent, B&D

24  has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial

25  despite B&D's express wishes.

26        The Court's recognition of the practical ramifications of the intertwinement of

27  willfulness in any laches determination was the impetus for the Court's invitation to

28  reconsider in its June 20, 2007 order. Having considered B&D's submission, which was

1 based upon the exact issues identified in this Court's own order, the Court hereby **GRANTS**

2 B&D's motion.  The bifurcated bench trial on equitable defenses previously scheduled for

3 December 17, 2007 is hereby **VACATED**, along with all pretrial proceedings associated with

4 it, including the November 26, 2007 pretrial conference.

5

6 **III.    Motion to Stay Litigation Pending Reexamination**

7        On August 3, 2007, all Defendants jointly filed a motion for a stay of these

8 proceedings.  Defendants' motion is based on B&D's pending request for reexamination of

9 Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on

10 July 30, 2007.  The request for reexamination challenges, *inter alia*, all 5 claims of the '184

11 Patent that are asserted in the present litigation.  The challenge is based on a number of

12 prior art references, almost all of which were apparently not considered by the PTO in the

13 prosecution of the '184 Patent.

14        Courts have inherent power to stay an action pending conclusion of PTO

15 reexamination proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422,1426-27 (Fed. Cir. 1988).

16 The decision whether to grant or deny a motion to stay proceedings pending PTO

17 reexamination rests within the sound discretion of the court.  See, e.g., Photoflex Products,

18 Inc. v. Circa 3 LLC, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D. Cal.

19 May 24, 2006).  There is a "liberal policy" in favor of granting motions to stay pending the

20 outcome of PTO reexamination proceedings. ASCII Corp. v. STD Entertainment USA, Inc.,

21 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

22        In determining whether to stay litigation pending reexamination by the PTO, courts

23 generally consider the following factors: (1) the stage of litigation, i.e., whether  discovery is

24 almost complete and whether a trial date has been set; (2) whether a stay would cause

25 undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether

26 a stay will simplify the issues in question and trial of the case.  See, e.g., Xerox Corp. v.

27 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

28        The Court finds that this litigation has not proceeded so far that it would be unjust to

1    stay the action.  Although this action was originally filed about a year ago, and the Court

2    recognizes that substantial amounts of discovery have already occurred, the more relevant

3    inquiry is whether discovery is nearing completion – it is not.[1]  For instance, Magistrate Judge

4    Bencivengo recently granted the parties permission to take an additional 10 depositions per

5    side.  [See Doc. #159 at 2.]  No deadline for the completion of fact discovery has even been

6    set.   Moreover,  the  parties  are  just  beginning  to  brief  the  preliminary  issue  of  claim

7    construction and, in accordance with the decision above to vacate the bifurcated bench trial

8    on equitable defenses, no trial date is currently set for any aspect of this case.  In addition,

9    while the Court has already considered two motions for summary judgment, it previously put

10   off consideration of two others until after claim construction, and Plaintiff has just filed a

11   substantial summary judgment motion aimed at piercing Black & Decker's corporate veil.

12   The Court anticipates that further summary judgment motions regarding infringement and

13   patent validity will be filed once claim construction is complete.  Thus, a substantial amount

14   of resources will be employed by all parties and the Court even in advance of any eventual

15   trial.  See, e.g., Broadcast Innovation, L.L.C. v. Charter Communications, Inc., No. 03-cv-

16   2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D. Colo. July 11, 2006) (granting

17   stay, in part, because of significant work remaining on motions for summary judgement, even

18   though trial date was less than three months away).

19        Plaintiff claims Defendants delayed filing their request for reexamination to gain a

20   tactical advantage over it.  He claims that Defendants were aware of the prior art that they

21   reference in their reexamination request over seven months ago, but purposely delayed so

22   that the '184 Patent would expire during the reexamination process, thereby precluding

23   Plaintiff from offering any amendments to the claims.  Defendants respond that there was no

24   intentional delay and that their decision to request reexamination was based, in part, on the

25   Supreme Court decision in KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007),

26   which was only issued at the end of April.  The Court is not convinced that Defendants

27   ────────────────

28        [1] In reaching this determination, the Court has considered the surreply submitted by
     Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. #201] is
     **GRANTED**.

6                                                                                              06cv1572

1   employed any improper tactics in filing their request for reexamination.  While Plaintiff is

2   rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct

3   disadvantage, he could have prevented this situation by filing suit many years ago, thereby

4   allowing sufficient time for any reexamination to occur before the patent expired.

5        Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered

6   basically boil down to his inconvenience in delaying final collection of any monetary award

7   of royalties, assuming he ultimately wins.  However, as the court recognized in Broadcast,

8   the prejudice factor "is best summarized by one question: *do the Plaintiffs have an adequate*

9   *remedy at law?*"  2006 U.S. Dist. LEXIS 46623, at *32.  Just as in Broadcast, the answer

10  here is that clearly Plaintiff does have an adequate remedy.  Defendants point out, and

11  Plaintiff has not disputed, that the '184 Patent will expire in February 2008 independent of

12  reexamination.  Given that a trial on the merits could not occur prior to that date, Plaintiff

13  would not have been granted any injunctive relief by this Court.  Therefore, his claim would

14  be restricted to past monetary damages, which, with the addition of prejudgment interest, are

15  fully capable of compensating Plaintiff.  Unfortunately, reexamination can be a drawn out

16  process, resulting in a significant delay in court proceedings.  Protracted delay is always a

17  risk inherent in granting a stay, yet courts continue to stay actions pending reexamination.

18  The general prejudice of having to wait for resolution is not a persuasive reason to deny the

19  motion for stay.  An average delay for reexamination of approximately 18-23 months is

20  especially inconsequential where Plaintiff himself waited as many as twelve years before

21  bringing the present litigation.  (See PTO Reexamination Statistics at Ex. B to Niro Decl.;

22  Doc. #180-3.)

23       In addition, the Federal Circuit has recently confirmed that the PTO would not be

24  bound in its reexamination by the determinations of this Court.  In re Trans Texas Holdings

25  Corp., 2006-1599 and 2006-1600, 2007 U.S. App. LEXIS 19909, at *14-19 (Fed. Cir. Aug.

26  22, 2007).  Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced

27  in these proceedings by a stay pending the PTO reexamination, but Defendants would

28  potentially be prejudiced by *failing* to enter a stay.  One court has explained this possibility

7

1    accordingly:

2
          Not only could the Court and the PTO reach conflicting determinations, but
3         one possible scenario could result in irreparable harm to [Defendant]: if this
          Court finds that the [patent] is not invalid and that [Defendant] has infringed
4         it, and orders [Defendant] to pay damages to [Plaintiff] for such infringement,
          then [Defendant] would have no ability to recover those damages if at a later
5         date the PTO determined that the [] patent is invalid.

6    Bausch & Lomb, Inc. v. Alcon Lab., Inc., 914 F. Supp. 951, 952 (W.D.N.Y. 1996). The Court

7    finds such a possibility to be, at a minimum, a highly undesirable outcome.

8         Finally, the Court finds that the stay will result in the simplification of issues in this

9    case. As explained by the Federal Circuit, "[o]ne purpose of the reexamination procedure

10   is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to

11   facilitate trial of that issue by providing the district court with the expert view of the PTO

12   (when a claim survives the reexamination proceeding)." Gould v. Control Laser Corp., 705

13   F.2d 1340, 1342 (Fed. Cir. 1983), cert. denied, 464 U.S. 935 (1983). The Broadcast court,

14   elaborating on this point, explained:

15        Shifting the patent validity issue to the PTO has many advantages, including:

16        1. All prior art presented to the Court will have been first considered by the
          PTO, with its particular expertise.
17
          2. Many discovery problems relating to prior art can be alleviated by the PTO
18        examination.

19        3. In those cases resulting in effective invalidity of the patent, the suit will
          likely be dismissed.
20
          4. The outcome of the reexamination may encourage a settlement without
21        the further use of the Court.

22        5. The record of reexamination would likely be entered at trial, thereby
          reducing the complexity and length of the litigation.
23
          6. Issues, defenses, and evidence will be more easily limited in final pretrial
24        conferences after a reexamination.

25        7. The cost will likely be reduced both for the parties and the Court.

26   2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,

27   3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)).

28        The Court believes that it will benefit from the PTO's evaluation of how the previously

                                             8

                                                                              06cv1572

1  unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert

2  evaluation is likely to be of assistance not only as to the issues of validity, but its

3  understanding of the claims is also likely to aid this Court in the preliminary process of claim

4  construction.

5  The Court finds that, especially in this case, the reexamination process has the

6  potential to significantly narrow the issues for trial because of the impending expiration of the

7  '184 Patent. While the parties have argued at length about exactly how this additional

8  variable affects the calculation of the likely outcome of reexamination, the Court need not

9  resolve this dispute to reach the proper conclusion. It is enough to note that when

10  reexamination is requested by a third party, as in this case, all claims are confirmed only 29%

11  of the time. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.) Since

12  no amendments can be offered to an expired patent, there is obviously a significant likelihood

13  that the validity of the claims at issue in this action will be affected by the reexamination

14  process.[2]

15  In addition, the Court expects that the reexamination process will not only aid the

16  Court in these proceedings, but should also redound to the benefit of the parties, both

17  Defendants and Plaintiff. As the Broadcast court explained in its discussion of the possibility

18  of prejudice from entering a stay:

19  If the PTO does not invalidate or otherwise alter the claims of the [] patent,
   the Plaintiffs' legal remedy remains unaffected . . . . Moreover, if the claims
20  are narrowed, both sets of parties will have benefitted by avoiding the
   needless waste of resources before this Court, and again, the Plaintiffs will
21  be able to pursue their claim for money damages at trial. Finally, if the claims
   are strengthened, the Plaintiffs' position will be as well, and their likelihood
22  of monetary damages will increase. See, e.g., Motson, 2005 U.S. Dist.
   LEXIS, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's
23  patent, 'the plaintiff's rights will only be strengthened, as the challenger's
   burden of proof becomes more difficult to sustain.'") (quoting Pegasus Dev.
24  Corp., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2).

25

26  [2] Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because
   the '184 Patent will expire soon. However, Plaintiff failed to produce any evidence to support
27  this contention. Moreover, even if Plaintiff is correct, and the PTO fails to grant
   reexamination (a decision which should issue no later than October 30, 2007), this Court
28  would immediately lift the stay and these proceedings would continue – a relatively
   insignificant 2-month delay being all that would result.

9

1  2006 U.S. Dist. LEXIS 46623, at *32-33. Accordingly, the Court finds that a stay is

2  appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues

3  before this Court.

4      Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and

5  **DENIED IN PART**. With the exception of two pending motions, all proceedings are hereby

6  stayed pending the PTO's reexamination of the '184 Patent. The Court will continue to hear

7  Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation

8  [Doc. #182], which is calendared for hearing on October 12, 2007. As was discussed above

9  in Section I, the Court will also continue to hear B&D's pending motion for reconsideration

10 of Magistrate Judge Bencivengo's August 3, 2007 order regarding production of Dennis

11 Dearing's attorney work product [Doc. #240], which is calendared for hearing on November

12 2, 2007. The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the

13 claim construction hearing previously set for November 19, 2007. All hearing dates will be

14 reset, to the extent appropriate, once the stay of these proceedings has been lifted.

15     Defendants are ordered to file a notice informing the Court of the PTO's decision on

16 the pending application for reexamination within 10 days of receipt of such decision. If the

17 PTO declines B&D's request to reexamine the '184 Patent, the Court will immediately lift the

18 stay and recalendar all vacated hearing dates. If, however, the PTO approves

19 reexamination, this stay will remain in place pending some resolution of those proceedings.

20 During the pendency of the reexamination, Defendants will be required to file a notice every

21 6 months apprising the Court of any change in the status of those proceedings.

22

23 **IV.    Motion for Partial Summary Judgment**

24     On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the

25 corporate veils of the Black & Decker Defendants, or in the alternative, holding them to be

26 a single enterprise for purposes of patent infringement liability. [Doc. #204.] The motion is

27 presently calendared for hearing on October 26, 2007. In light of the Court's entry of a stay

28 of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's

1  motion to be premature.  Accordingly, the Court hereby **DENIES** Plaintiff's motion without

2  prejudice.[3] As the Court is aware of the substantial volume of Plaintiff's motion, he is invited

3  to refile this motion once the stay has been lifted by simply filing a short notice of motion

4  which incorporates by reference his earlier filing.

5

6  **IT IS SO ORDERED.**

7

8  DATED:  September 10, 2007

9                                     *Barry Ted Moskowitz*

10                                    Honorable Barry Ted Moskowitz
                                       United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____

   [3] Plaintiff's pending motion to file confidential documents under seal in support of the
motion for partial summary judgment [Doc. #204-5] is also **DENIED** as moot.

11                                                                    06cv1572

# EXHIBIT "2"

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,775 | 07/30/2007 | 4935184 | X32441 | 9943 |

22653        7590        10/11/2007

EDWARD W CALLAN
NO. 705 PMB 452
3830 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 10/11/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

10/11/07

Arnold Turk, Esq.

Greenblum & Bernstein P. L. C.

1950 Roland Clarke Place

Reston VA   20191

## *EX PARTE*  REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008775

PATENT NO.   4,935,184

ART UNIT 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination | |
|---|---|---|---|
| | 90/008,775 | 4935184 | |
| | Examiner | Art Unit | |
| | Alan Diamond | 3991 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>30 July 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____, or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Alan  Diamond
Primary Examiner
Art Unit: 3991

cc:Requester ( if third party requester )

Application/Control Number: 90/008,775                                    Page 2
Art Unit: 3991

### Decision on Reexamination Request

1.      A substantial new question of patentability affecting claims 1, 2, 4, and 6-10 of

United States Patent Number 4,935,184 to Sorensen, is raised by the request for *ex*

*parte* reexamination.  The request for reexamination is Third Party requested.

2.      Since requestor did not request reexamination of claims 3 and 5 and did not

assert the existence of a substantial new question of patentability (SNQ) for such claims

(see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be

reexamined.  This matter was squarely addressed in *Sony Computer Entertainment*

*America Inc., et al v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22,

2006), Slip Copy, 2006 WL 1472462.  The District Court upheld the Office's discretion to

not reexamine claims in a reexamination proceeding other than those claims for which

reexamination had specifically been requested.  The Court stated:

> "To be sure, a party may seek, and the PTO may grant, ...review of each and every
> claim of a patent. Moreover, while the PTO in its discretion may review claims for
> which ... review was not requested, nothing in the statute compels it to do so. To
> ensure that the PTO considers a claim for ... review, ...requires that the party
> seeking reexamination demonstrate why the PTO should reexamine each and every
> claim for which it seeks review. Here, it is undisputed that **Sony** did not seek review
> of every claim under the '213 and '333 patents. Accordingly, **Sony** cannot now
> claim that the PTO wrongly failed to reexamine claims for which **Sony** never
> requested review, and its argument that AIPA compels a contrary result is
> unpersuasive."

### Extension of Time

3.      Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

Application/Control Number: 90/008,775                                    Page 3
Art Unit: 3991

*ex parte* reexamination proceedings "will be conducted with special dispatch" (37

CFR 1.550(a)).  Extensions of time in *ex parte* reexamination proceedings are provided

for in 37 CFR 1.550(c).


### Substantial New Question of Patentability (SNQ)

4.      The presence or absence of a "substantial new question of patentability"

determines whether or not reexamination is ordered.

For a "substantial new question of patentability" to be present, it is only

necessary that :

A) the prior art patents and/or printed publications raise a substantial new

question of patentability regarding at least one claim, i.e., the teaching of the (prior art)

patents and printed publications is such that a reasonable examiner would consider the

teaching to be important in deciding whether or not the claim is patentable; and

B) the same question of patentability as to the claim has not been decided by the

Office in a previous examination of the patent or in a final holding of invalidity by the

Federal Courts in a decision on the merits involving the claim.

A SNQ may be based solely on old art where the old art is being

presented/viewed in a new light, or in a different way, as compared with its use in the

earlier concluded examination(s), in view of a material new argument or interpretation in

the request.  (MPEP 2242).

Application/Control Number: 90/008,775                                    Page 4
Art Unit: 3991

### *Request*

5.      **The request indicates the Requestor considers that Moscicki (U.S. Patent**

**3,178,497) raises a substantial new question of patentability with respect to**

**claims 1, 4, 6-8 and 10 of Sorensen.**

It is agreed that consideration of Moscicki raises a substantial new question of

patentability as to claims 1, 4, 6-8 and 10 of Sorensen.  Page 28, line 14 though page

32, seventh line from the bottom; page 56 at the start of section 8 through page 58, line

5; page 83, line 13 through page 86, line 9; page 86, line 22 through page 87, line 22;

page 94, lines 1-19; page 98, line 6 through page 99, line 2; and page 107, line 18

through page 108, line 11, of the request for reexamination are hereby incorporated by

reference for their explanation of the teaching provided in Moscicki that was not present

in the prosecution of the application which became the Sorensen patent.  There is a

substantial likelihood that a reasonable examiner would consider this teaching important

in deciding whether or not claims 1, 4, 6-8 and 10 of Sorensen were patentable.

Accordingly, Moscicki raises a substantial new question of patentability as to claims 1,

4, 6-8 and 10, which question has not been decided in a previous examination of the

Sorensen patent.


6.      **The request indicates the Requestor considers that Seima (GB 2004494 A)**

**raises a substantial new question of patentability with respect to claims 1, 2 and**

**6-10 of Sorensen.**

Application/Control Number: 90/008,775                                    Page 5
Art Unit: 3991

It is agreed that consideration of Seima raises a substantial new question of patentability as to claims 1, 2 and 6-10 of Sorensen. Page 32, sixth line from the bottom, through the end of page 36; page 60, fifth line from the bottom, through page 62, line 3; page 80, line 10 through page 83, line 12; page 88, line 13 through page 89, line 15; page 95, line 13 through page 96, line 9; page 99, line 15 through page 100, line 11; page 104, line 1 through page 107, line 4; and page 109, lines 1-20, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Seima that was not present in the prosecution of the application which became the Sorensen patent. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 2 and 6-10 of Sorensen were patentable. Accordingly, Seima raises a substantial new question of patentability as to claims 1, 2 and 6-10, which question has not been decided in a previous examination of the Sorensen patent.

7.    **The request indicates the Requestor considers that Gits (U.S. Patent 2,863,241) raises a substantial new question of patentability with respect to claim 1 of Sorensen.**

It is agreed that consideration of Gits raises a substantial new question of patentability as to claim 1 of Sorensen. Page 37, line 1 through the end of section 3 on page 40, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Gits that was not present in the prosecution of the application which became the Sorensen patent. There is a substantial likelihood

Application/Control Number: 90/008,775                                    Page 6
Art Unit: 3991

that a reasonable examiner would consider this teaching important in deciding whether

or not claim 1 of Sorensen was patentable.  Accordingly, Gits raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


8.      **The request indicates the Requestor considers that Shiho** *et al* **(U.S. Patent**

**4,440,820, hereinafter "Shiho") raises a substantial new question of patentability**

**with respect to claims 1, 6-8 and 10 of Sorensen.**

        It is agreed that consideration of Shiho raises a substantial new question of

patentability as to claims 1, 6-8 and 10 of Sorensen.  The beginning of section 4 on

page 40 through the end of section 4 on page 44; page 90, lines 4-20; page 96, line 23

through page 97, line  6; page 101, lines 1-11; and page 110, lines 14-23, of the request

for reexamination are hereby incorporated by reference for their explanation of the

teaching provided in Shiho that was not present in the prosecution of the application

which became the Sorensen patent.  There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1, 6-

8 and 10 of Sorensen were patentable.  Accordingly, Shiho raises a substantial new

question of patentability as to claims 1, 6-8 and 10, which question has not been

decided in a previous examination of the Sorensen patent.

Application/Control Number: 90/008,775                                    Page 7
Art Unit: 3991

9.      The request indicates the Requestor considers that JP 60-119520 U to
Toyota Motor (hereinafter "Toyota") raises a substantial new question of
patentability with respect to claim 1 of Sorensen.

        It is agreed that consideration of Toyota raises a substantial new question of
patentability as to claim 1 of Sorensen.  The beginning of section 5 on page 44 through
the end of section 5 on page 48; and page 70, line 1 through page 71, line 8, of the
request for reexamination are hereby incorporated by reference for their explanation of
the teaching provided in Toyota that was not present in the prosecution of the
application which became the Sorensen patent.  There is a substantial likelihood that a
reasonable examiner would consider this teaching important in deciding whether or not
claim 1 of Sorensen was patentable.  Accordingly, Toyota raises a substantial new
question of patentability as to claim 1, which question has not been decided in a
previous examination of the Sorensen patent.


10.     The request indicates the Requestor considers that German Published
Patent Application No. 1850999 to Echterholter raises a substantial new question
of patentability with respect to claim 1 of Sorensen.

        It is agreed that consideration of Echterholter raises a substantial new question
of patentability as to claim 1 of Sorensen.  The beginning of section 6 on page 48
through page 53, line 6; and page 73, line 10 through page 74, line 17, of the request
for reexamination are hereby incorporated by reference for their explanation of the
teaching provided in Echterholter that was not present in the prosecution of the

Application/Control Number: 90/008,775                                    Page 8
Art Unit: 3991

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 of Sorensen was patentable.  Accordingly, Echterholter raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


11.    **The request indicates the Requestor considers that Wright, "New vigor for**

**two-shot molding automation... versatility... ingenuity," Modern Plastics, May**

**1986, pp. 79-83, (hereinafter "Modern Plastics") raises a substantial new question**

**of patentability with respect to claims 1, 6 and 8 of Sorensen.**

It is agreed that consideration of Modern Plastics raises a substantial new

question of patentability as to claims 1, 6 and 8 of Sorensen.  Page 53, line 7 through

the end of section 7 on page 56; page 77, line 1 through page 78, line 8; page 92, line 9

through page 93, line 12; and page 102, line 16 through page 103, line 11, of the

request for reexamination are hereby incorporated by reference for their explanation of

the teaching provided in Modern Plastics that was not present in the prosecution of the

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claims 1, 6 and 8 of Sorensen were patentable.  Accordingly, Modern Plastics raises a

substantial new question of patentability as to claims 1, 6 and 8, which question has not

been decided in a previous examination of the Sorensen patent.

12.    **The request indicates the Requestor considers that Moscicki in view of
Echterholter and further in view of Modern Plastics raises a substantial new
question of patentability with respect to claims 1, 4, 6-8 and 10 of Sorensen.**

It is agreed that consideration of Moscicki in view of Echterholter and further in
view of Modern Plastics raises a substantial new question of patentability as to claims 1,
4, 6-8 and 10 of Sorensen. Page 58, line 6 through the end of section 9 on page 60;
page 86, lines 10-21; page 88, lines 1-12; page 95, lines 1-12; page 99, lines 3-14; and
page 108, lines 12-23, of the request for reexamination are hereby incorporated by
reference for their explanation of the teaching provided in Moscicki, Echterholter and
Modern Plastics that was not present in the prosecution of the application which
became the Sorensen patent. There is a substantial likelihood that a reasonable
examiner would consider this teaching important in deciding whether or not claims 1, 4,
6-8 and 10 of Sorensen were patentable. Accordingly, Moscicki in view of Echterholter
and further in view of Modern Plastics raises a substantial new question of patentability
as to claims 1, 4, 6-8 and 10, which question has not been decided in a previous
examination of the Sorensen patent.

13.    **The request indicates the Requestor considers that Seima in view of
Echterholter and further in view of Modern Plastics raises a substantial new
question of patentability with respect to claims 1 and 6-10 of Sorensen.**

It is agreed that consideration of Seima in view of Echterholter and further in view
of Modern Plastics raises a substantial new question of patentability as to claims 1 and

6-10 of Sorensen. Page 62, line 4 through page 64, line 3; page 89, line 16 through

page 90, line 3; page 96, lines 10-22; page 100, lines 12-24; page 107, lines 5-17; and

page 110, lines 1-13, of the request for reexamination are hereby incorporated by

reference for their explanation of the teaching provided in Seima, Echterholter and

Modern Plastics that was not present in the prosecution of the application which

became the Sorensen patent. There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1

and 6-10 of Sorensen were patentable. Accordingly, Seima in view of Echterholter and

further in view of Modern Plastics raises a substantial new question of patentability as to

claims 1 and 6-10, which question has not been decided in a previous examination of

the Sorensen patent.

14.    **At page 64, line 4 through page 67, line 18; page 90, line 21 through page
91, line 13; page 97, lines 7-16; and page 101, lines 12-22, the request indicates
the Requestor considers that Schad (U.S. Patent 4,422,995) raises a substantial
new question of patentability with respect to claims 1 and 6-8 of Sorensen.**

        Schad **does not** raise a substantial new question of patentability with respect to

claims 1 and 6-8 of Sorensen. In the prosecution of application Serial No. 07/386,012,

which matured into the Sorensen patent, Schad was used to reject all the claims (1-10)

under 35 USC 103(a). The rejection over Schad was overcome and the Sorensen

patent was allowed after applicant amended steps (h) and (i) of claim 1 so as to recite

the injection of first/second plastic material until it reaches the portion of the first/second

Application/Control Number: 90/008,775                                    Page 11
Art Unit: 3991

mold cavity that defines the rim of the product.  Third party requestor even admits at

page 66, lines 16-18, of the request that "Schad does not specifically disclose a first

injection material which 'reaches the portion of the mold cavity that defines the rim of

the product.'"  Third party requestor cites *KSR int'l Co. v. Teleflex Inc.* and design

choice for the obviousness of modifying Schad so that a first injection material reaches

the portion of the mold cavity that defines the rim of the product (Request, pages 66-

67).  Third party requestor notes that "design choice" with respect to product shape was

considered by the Examiner in the rejection over Schad that was mailed 10/11/1988

during prosecution of the 07/386,012 application (see page 67 of the Request).

Consideration of Shad in view of *KSR int'l Co. v. Teleflex Inc.* or  "design choice" does

not provide any new teaching with respect to Schad as compared with its use in the

prosecution of the Sorensen patent.  Accordingly, Schad is not being viewed in a new

light compared with its use in the prosecution of the Sorensen patent, and thus, does

not raise a substantial new question of patentability with respect to claims 1 and 6-8 of

Sorensen.


15.     **The request indicates the Requestor considers that Schad in view of**

**Moscicki and further in view of Seima and Shiho raises a substantial new**

**question of patentability with respect to claims 1 and 6-8 of Sorensen.**

It is agreed that consideration of Schad in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claims 1 and 6-

8 of Sorensen.  Page 67, lines 19 through the last line on page 69; page 91, line 14

Application/Control Number: 90/008,775                                    Page 12
Art Unit: 3991

through page 92, line 8; page 97, line 17 through page 98, line 5; and page 102, lines 1-

15, of the request for reexamination are hereby incorporated by reference for their

explanation of the teaching provided in Schad, Moscicki, Seima and Shiho that was not

present in the prosecution of the application which became the Sorensen patent.  There

is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not claims 1 and 6-8 of Sorensen were patentable.

Accordingly, Schad in view of Moscicki and further in view of Seima and Shiho raises a

substantial new question of patentability as to claims 1 and 6-8, which question has not

been decided in a previous examination of the Sorensen patent.


16.     The request indicates the Requestor considers that Toyota in view of

Moscicki and further in view of Seima and Shiho raises a substantial new

question of patentability with respect to claim 1 of Sorensen.

        It is agreed that consideration of Toyota in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claim 1 of

Sorensen.  Page 71, line 9 through page 73, line 9, of the request for reexamination are

hereby incorporated by reference for their explanation of the teaching provided in

Toyota, Moscicki, Seima and Shiho that was not present in the prosecution of the

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 Sorensen was patentable.  Accordingly, Toyota in view of Moscicki and further

in view of Seima and Shiho raises a substantial new question of patentability as to claim

Application/Control Number: 90/008,775                                    Page 13
Art Unit: 3991

1, which question has not been decided in a previous examination of the Sorensen

patent.

17.    **The request indicates the Requestor considers that Echterholter in view of
Moscicki and further in view of Seima and Shiho raises a substantial new
question of patentability with respect to claim 1 of Sorensen.**

It is agreed that consideration of Echterholter in view of Moscicki and further in

view of Seima and Shiho raises a substantial new question of patentability as to claim 1

of Sorensen.  Page 74, line 18 through the last line on page 76, of the request for

reexamination are hereby incorporated by reference for their explanation of the teaching

provided in Echterholter, Moscicki, Seima and Shiho that was not present in the

prosecution of the application which became the Sorensen patent.  There is a

substantial likelihood that a reasonable examiner would consider this teaching important

in deciding whether or not claim 1 Sorensen was patentable.  Accordingly, Echterholter

in view of Moscicki and further in view of Seima and Shiho raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.

18.    **The request indicates the Requestor considers that Modern Plastics in view
of Moscicki and further in view of Seima and Shiho raises a substantial new
question of patentability with respect to claims 1, 6 and 8 of Sorensen.**

Application/Control Number: 90/008,775                                    Page 14
Art Unit: 3991

     It is agreed that consideration of Modern Plastics in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claims 1, 6 and 8 of Sorensen. Page 78, line 9 through page 80, line 9; page 93, lines 13-25; and page 103, lines 12-24, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Modern Plastics, Moscicki, Seima and Shiho that was not present in the prosecution of the application which became the Sorensen patent. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 6 and 8 of Sorensen were patentable. Accordingly, Modern Plastics in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claims 1, 6 and 8, which question has not been decided in a previous examination of the Sorensen patent.

### Duty to Disclose

19.    The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 4,935,184 throughout the course of this reexamination proceeding. The third party requestor is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/008,775                                    Page 15
Art Unit: 3991

### *Correspondence*

14.    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Alan Diamond whose telephone number is (571) 272-

1338.  The examiner can normally be reached on Monday through Friday from 5:30

a.m. to 2:00 p.m.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Deborah Jones can be reached on (571) 272-1535.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

### *Notice Re Patent Owner's Correspondence Address*

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte*
reexamination or an *inter partes* reexamination is designated as the correspondence
address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte*
> *and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not**
**having the same correspondence address as that of the patent is, by way of this**

Application/Control Number: 90/008,775                                    Page 16
Art Unit: 3991

revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of
the effective date.

This change is effective for any reexamination proceeding which is pending before the
Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any
reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct
communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for
the present proceeding is different from the correspondence address of the patent, it is
strongly encouraged that the patent owner affirmatively file a Notification of Change of
Correspondence Address in the reexamination proceeding and/or the patent (depending
on which address patent owner desires), to conform the address of the proceeding with
that of the patent and to clarify the record as to which address should be used for
correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                     (571) 272-7705
Reexamination Facsimile Transmission No.      (571) 273-9900

Please mail any communications to:
        Attn: Mail Stop "Ex Parte Reexam"
        Central Reexamination Unit
        Commissioner for Patents
        P. O. Box 1450
        Alexandria VA   22313-1450

Please FAX any communications to:
        (571) 273-9900
        Central Reexamination Unit

Application/Control Number: 90/008,775                    Page 17
Art Unit: 3991

Please hand-deliver any communications to:
    Customer Service Window
    Attn:  Central Reexamination Unit
    Randolph Building, Lobby Level
    401 Dulany Street
    Alexandria, VA  22314

Signed:

Alan Diamond
Primary Examiner
Central Reexamination Unit
Art Unit 3991
(571) 272-1338

/Jerry D. Johnson/
Primary Examiner
Art Unit 3991

STEPHEN J. STEIN
CRU EXAMINER - AU 3991

# EXHIBIT "3"

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,976 | 12/21/2007 | 4935184 | 065640-0260 | 6753 |

22653        7590        02/21/2008

EDWARD W CALLAN
NO. 705 PMB 452
3830 VALLEY CENTRE DRIVE
SAN DIEGO, CA  92130

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 02/21/2008

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Pavan Agarwal

Foley & Lardner LLP

3000 K Street, NW, Suite 500

Washington, DC 20007

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,976*.

PATENT NO. *4935184*.

ART UNIT *3991*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,976 | Patent Under Reexamination 4935184 | |
|---|---|---|---|
| | Examiner Krisanne Jastrzab | Art Unit 3991 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>21 December 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☐ Other: _____

1. ☒   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

/Krisanne  Jastrzab/
Primary Examiner
Art Unit: 3991

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)                    Office Action in *Ex Parte* Reexamination                    Part of Paper No. 20080220

71338   U.S. PTO

12/21/07

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

00000970
12/21/07

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | Reexamination Control Number | Unassigned |
| Date Submitted: December 21, 2007 | | Patent Number | 4,935,184 |
| | | First Named Inventor | Jens O. Sorensen |
| Sheet | 1 of 2 | Attorney Docket Number | 065640-0260 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| /K.J./ | A1 | 4,935,184 | 06/19/1990 | SORENSEN | |
| | A2 | 4,422,995 | 12/27/1983 | SCHAD | |
| | A3 | 4,508,676 | 04/02/1985 | SORENSEN | |
| /K.J./ | A4 | 3,375,554 | 04/02/1968 | BLUMER | |
| | | | | | |

### UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document<br>Serial Number-Kind Code[2] (if known) | Filing Date of Cited Document<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]Number[4]Kind Code[5] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| /K.J./ | A5 | JP 59-199227 | 11/12/1984 | IDEMITSU SEKIYU KAGAKU KK | | Tr. |
| | A6 | JP 60-154022 | 08/13/1985 | FUJITSU, LTD. | | Tr. |
| | A7 | JP 58-82401 | 05/18/1983 | NISSAN MOTOR CO., LTD. | | Tr. |
| /K.J./ | A8 | JP S52-51449 | 04/25/1977 | KABUSHIKI KAISHA YOSHINO KOGYOSHO | | Tr. |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | A9 | ~~SUMITOMO HEAVY INDUSTRIES, LTD., Promat 100-100/100 Sumitomo-Netstal Dual Material Injection Molding Machine~~ | Tr. |

| Examiner Signature | /Krisanne Jastrzab/ | Date Considered | 02/20/2008 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MEPP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional) 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

WASH_2164550.1

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br><br>Date Submitted: December 21, 2007 | | | | Reexamination Control Number | Unassigned |
| | | | | Patent Number | 4,935,184 |
| | | | | First Named Inventor | Jens O. Sorensen |
| Sheet | 2 | of | 2 | Attorney Docket Number | 065640-0260 |

**NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| /K.J./ | A10 | WRIGHT, "New Vigor for Two-Shot Molding with Automation," *Modern Plastics*, Vol. 45, No. 9, May 1968, pp. 78 – 83. | |
| | A11 | Plaintiff's Amended Preliminary Claim Constructions and Extrinsic Evidence , SORENSEN v. THE BLACK & DECKER CORPORATION ET AL., U.S. District Court for the Southern District of California, Case No. 06-cv-1572 BTM (CAB). | |
| | A12 | SORENSEN v. INTERNATIONAL TRADE COM'N., 427 F.3d 1375 (Fed. Cir. 2005) | |
| | A13 | Deposition of Paul P. Brown, December 19, 2006, SORENSEN v. THE BLACK & DECKER CORPORATION ET AL., U.S. District Court for the Southern District of California, Case No. 06-cv-1572 BTM (CAB). | |
| /K.J./ | A14 | Plaintiffs' Local Civil Rule 56.1 Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment of Invalidity Based on Prior Art, U.S. District Court for the District of New Jersey Newark Vicinage, CIV. No. 03-1763(HAA). | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /Krisanne Jastrzab/ | Date Considered | 02/20/2008 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

WASH_2164550.1

Application/Control Number:                                            Page 2
90/008,976
Art Unit: 3991

### *Reexamination*

### Decision on Reexamination Request

A substantial new question of patentability affecting claims 1, 2, 4 and 6-10 of

United States Patent Number 4,935,184 (hereinafter referred to as "the '184 patent) is

raised by the request for *ex parte* reexamination.  The request was filed by a Third Party

on 12/21/2007.

Since requestor did not request reexamination of claims 3 and 5 and did not

assert the existence of a substantial new question of patentability (SNQ) for such claims

(see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be

reexamined. This matter was squarely addressed in *Sony Computer Entertainment*

*America Inc., et al v. Jon W. Dudas,* Civil Action No. 1:05CV1447 (E.D.Va. May 22,

2006), Slip Copy, 2006 WL 1472462. The District Court upheld the Office's discretion to

not reexamine claims in a reexamination proceeding other than those claims for which

reexamination had specifically been requested. The Court stated:

"To be sure, a party may seek, and the PTO may grant .... review of each and every
claim of a patent. Moreover, while the PTO in its discretion may review claims for
which ... review was not requested, nothing in the statute compels it to do so. To
ensure that the PTO considers a claim for ... review, ...requires that the party
seeking reexamination demonstrate why the PTO should reexamine each and every
claim for which it seeks review. Here, it is undisputed that Sony did not seek review
of every claim under the '213 and '333 patents. Accordingly, Sony cannot now
claim that the PTO wrongly failed to reexamine claims for which Sony never
requested review, and its argument that AIPA compels a contrary result is
unpersuasive."

### Extensions of Time

Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that

Application/Control Number:                                        Page 3
90/008,976
Art Unit: 3991

*ex parte* reexamination proceedings "will be conducted with special dispatch" (37

CFR 1.550(a)).  Extensions of time in *ex parte* reexamination proceedings are provided

for in 37 CFR 1.550(c).

## Substantial New Question of Patentability (SNQ)

The substantial new question of patentability (SNQ) is based on:

JP S59-199227 (hereinafter referred to as "JP '227")

JP 60-154022 (hereinafter referred to as "JP '022")

JP 58-82401 (hereinafter referred to as "JP '401")

JP S52-51449 (hereinafter referred to as "JP '449")

Schad, U.S. patent No. 4,422,995 (hereinafter referred to as "Schad")

Blumer U.S. patent No. 3,375,554 (hereinafter referred to as "Blumer")

Sorensen U.S. patent No. 4,508,676 (hereinafter referred to as "Sorensen")

Promot 100-100/100 (hereinafter referred to as "Promot 100")

Modern Plastics, "New Vigor for Two-Shot Molding with

Automation…Versatility…Ingenuity" (hereinafter referred to as "Modern Plastics")

A discussion of the specifics follows:

## Request

Application/Control Number:
90/008,976
Art Unit: 3991

Page 4

**The request indicates that the Requestor considers JP '227 as raising a substantial new question of patentability for claims 1, 6-8 and 10 of the '184 patent.**

It is agreed that the consideration of JP '227 raises an SNQ as to claims 1, 6-8 and 10 of the '184 patent.  The last paragraph of page 31 through page 42 of the request is hereby incorporated by reference for the explanation of the teachings provided in JP '227 regarding a method of two-shot injection molding of a part utilizing a common mold core.  These teachings were not present in the prosecution of the application which became the '184 patent.  Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable.  Accordingly, JP '227 raises a substantial new question of patentability as to claims 1, 6-8 and 10, which question has not been decided in a previous examination of the '184 patent.

**The request indicates that the Requestor considers JP '022 as raising a substantial new question of patentability for claims 1 and 10 of the '184 patent.**

It is agreed that the consideration of JP '022 raises an SNQ as to claims 1 and 10 of the '184 patent.  Page 43 through the top of page 47 of the request is hereby incorporated by reference for the explanation of the teachings provided in JP '022 regarding a method of two-shot injection molding of a part utilizing a common mold core.  These teachings were not present in the prosecution of the application which became the '184 patent.  Further, there is a substantial likelihood that a reasonable

Application/Control Number:                                    Page 5
90/008,976
Art Unit: 3991

examiner would consider these teachings important in deciding whether or not these

claims are patentable. Accordingly, JP '022 raises a substantial new question of

patentability as to claims 1 and 10, which question has not been decided in a previous

examination of the '184 patent.


**The request indicates that the Requestor considers JP '401 as raising a**

**substantial new question of patentability for claims 1 and 10 of the '184 patent.**

It is agreed that the consideration of JP '401 raises an SNQ as to claims 1 and

10 of the '184 patent. The bottom of page 47 through the top of page 52 of the request

is hereby incorporated by reference for the explanation of the teachings provided in JP

'401 regarding a method of two-shot injection molding of a part utilizing a common mold

core. These teachings were not present in the prosecution of the application which

became the '184 patent. Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not these

claims are patentable. Accordingly, JP '401 raises a substantial new question of

patentability as to claims 1 and 10, which question has not been decided in previous

examination of the '184 patent.


**The request indicates that the Requestor considers the combination of JP**

**'449 and the Admitted State of the Prior Art as raising a substantial new question**

**of patentability for claims 1 and 6-9 of the '184 patent.**

Application/Control Number:                                        Page 6
90/008,976
Art Unit: 3991

It is agreed that the combination of JP '449 and the Admitted State of the Prior

Art raises an SNQ as to claims 1 and 6-9 of the '184 patent. The bottom of page 6

through the top of page 9, page 22 beginning at "E." through the top of page 27 and

page 54 through the top of page 60 of the request is hereby incorporated by reference

for the explanation of the Admitted State of the Prior Art and the teachings in JP '449

regarding a method of molding a two-component part. These combined teachings were

not present in the prosecution of the application which became the '184 patent. Further,

there is a substantial likelihood that a reasonable examiner would consider these

teachings important in deciding whether or not these claims are patentable.

Accordingly, the combination of JP '449 and the Admitted State of the Prior Art, raise a

substantial new question of patentability as to claims 1 and 6-9, which question has not

been decided in previous examination of the '184 patent.


**The request indicates that the Requestor considers the combination of JP**

**'449, the Admitted State of the Prior Art and Schad as raising a substantial new**

**question of patentability for claim 10 of the '184 patent.**

It is agreed that the combination of JP '449, the Admitted State of the Prior Art

and Schad raises an SNQ as to claim 10 of the '184 patent. Page 60 of the request is

hereby incorporated by reference for the explanation of the teachings of Schad

regarding the separation of mold components in a two-shot molding process as

applicable to the combination of the JP '449 and the Admitted State of the Prior Art.

These combined teachings were not present in the prosecution of the application which

Application/Control Number:                                    Page 7
90/008,976
Art Unit: 3991

became the '184 patent. Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not this claim

is patentable. Accordingly, the combination of JP '449, the Admitted State of the Prior

Art and Schad, raises a substantial new question of patentability as to claim 10, which

question has not been decided in previous examination of the '184 patent.

**The request indicates that the Requestor considers the combination of JP**

**'449 and Modern Plastics as raising a substantial new question of patentability for**

**claim 1 of the '184 patent.**

It is agreed that the combination of JP '449 and Modern Plastics raises an SNQ

as to claim 1 of the '184 patent. Pages 60-64 of the request are hereby incorporated by

reference for the explanation of the combination of the teachings of JP '449 and Modern

Plastic regarding a two-shot molding process. These combined teachings were not

present in the prosecution of the application which became the '184 patent. Further,

there is a substantial likelihood that a reasonable examiner would consider these

teachings important in deciding whether or not this claim is patentable. Accordingly, the

combination of JP '449 and Modern Plastics raises a substantial new question of

patentability as to claim 1, which question has not been decided in previous

examination of the '184 patent.

Application/Control Number:                                          Page 8
90/008,976
Art Unit: 3991

**The request indicates that the Requestor considers the combination of JP**

**'227 and Modern Plastics as raising a substantial new question of patentability for**

**claims 1, 2, 4, and 6-10 of the '184 patent.**

It is agreed that the combination of JP '227 and Modern Plastics raises an SNQ

as to claims 1, 2, 4 and 6-10 of the '184 patent.  Page 65 through the top of page 68 of

the request is hereby incorporated by reference for the explanation of the combination

of teachings of JP '227 and Modern Plastics regarding a two-shot molding process.

These combined teachings were not present in the prosecution of the application which

became the '184 patent.  Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not these

claims are patentable.  Accordingly, the combination of JP '227 and Modern Plastics

raises a substantial new question of patentability as to claims 1, 2, 4 and 6-10, which

question has not been decided in previous examination of the '184 patent.

**The request indicates that the Requestor considers the combination of**

**either JP '022 or JP '401 and Promot 100 as raising a substantial new question of**

**patentability for claims 6-8 of the '184 patent.**

It is agreed that the combination of JP '022 or JP '401 in view of Promot 100

raises an SNQ as to claims 6-8 of the '184 patent.  The bottom of page 67 through the

top of page 72 is hereby incorporated by reference for the explanation of the

combination of teachings of JP '022 or JP '401 with Promot 100 regarding a two-shot

molding process.  While no date has been supplied for Promot 100, it is noted that

Application/Control Number:                                    Page 9
90/008,976
Art Unit: 3991

during prosecution of the application which became the '184 patent, an IDS was

submitted (6/16/1988) citing Promot 100 and noting that Figures 1 through 4 of Promot

11 illustrate the prior art described in the Background portion of the specification of the

application which became the '184 patent. These combined teachings were not present

in the prosecution of the application which became the '184 patent. Further, there is a

substantial likelihood that a reasonable examiner would consider these teaching

important in deciding whether or not these claims are patentable. Accordingly, the

combination of JP '022 or JP '401 and Promot 100, raises a substantial new question of

patentability as to claims 6-8, which question has not been decided in previous

examination of the '184 patent.


**The request indicates that the Requestor considers the combination of**

**either JP '227, JP '022 or JP '401 with either Blummer or Soreneson as raising a**

**substantial new question of patentability for claim 9 of the '184 patent.**

It is agreed that the combination of either JP '227, JP '022 or JP '401 in view of

either Bummer or Sorensen raises an SNQ as to claim 9 of the '184 patent. The bottom

of page 72 through page 74 of the request is hereby incorporated by reference for the

explanation of the combination of the teachings of any of JP '227, JP '022 or JP '401

and either Blummer or Sorensen regarding the securing of two mold components in a

two-shot molding process. These combined teachings were not present in the

prosecution of the application which became the '184 patent. Further, there is a

substantial likelihood that a reasonable examiner would consider these teachings

Application/Control Number: ·                                    Page 10
90/008,976
Art Unit: 3991

important in deciding whether or not this claim is patentable. Accordingly, the

combination of any of JP '227, JP '022 or JP '401 with either Blummer or Sorensen

raises a substantial new question of patentability as to claim 9, which question has not

been decided in previous examination of the '184 patent.

### Duty of Disclosure

The patent owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving Patent No. 4,935,184 throughout the course of this reexamination

proceeding. The third party requester is also reminded of the ability to similarly apprise

the Office of any such activity or proceeding throughout the course of this reexamination

proceeding. See MPEP §§ 2207, 2282 and 2286.

### Service of Papers

After the filing of a request for reexamination by a third party requester, any

document filed by either the patent owner or the third party requester must be served on

the other party (or parties where two or more third party requester proceedings are

merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. See

37 CFR 1.550(f).

### Waiver of Right to File Patent Owner Statement

In a reexamination proceeding, Patent Owner may waive the right under 37

C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a

Application/Control Number:                          Page 11
90/008,976
Art Unit: 3991

statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent

Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the

request for reexamination was made by a third party requester, see 37 C.F.R 1.550(f).

## Correspondence

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Krisanne Jastrzab whose telephone number is 571-272-

1279. The examiner can normally be reached on Mon.-Thurs. 6:00am-4:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Deborah Jones can be reached on 571-272-1535

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number:                                        Page 12
90/008,976
Art Unit: 3991

### Notice Re Patent Owner's Correspondence Address

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.
Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

Please mail any communications to:

Mail Stop *Ex Parte* Reexam
ATTN:  Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450

Application/Control Number:                                    Page 13
90/008,976
Art Unit: 3991

      Alexandria, VA  22313-1450

Please FAX to:
      (571) 273-9900
      Central Reexamination Unit

Please hand-deliver to:
      Customer Service Window
      Randolph Building
      401 Dulany St.
      Alexandria, VA  22314

/Krisanne Jastrzab/                        /Alan Diamond/
Primary Examiner                           Primary Examiner
Central Reexamination Unit                 Art Unit 3991
Art unit 3991
(571) 272-1279

JERRY D. JOHNSON
PRIMARY EXAMINER
CRU - AU 3991

# EXHIBIT "4"

1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT

7           FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9    JENS ERIK SORENSEN,

10              Plaintiff,                         No. C 07-05568 JSW

11        v.

12   DIGITAL NETWORKS NORTH AMERICA          **ORDER GRANTING**
     INC.; LEGACY SUPPORT SERVICES, LTD.     **DEFENDANT'S MOTION TO**
13   d/b/a S2G; and DOES 1 through 100,      **STAY LITIGATION**
                                             **PENDING REEXAMINATION**
14              Defendants.                  **OF PATENT-IN-SUIT**
     _____/

15

16        Now before the Court is Defendant Digital Networks North America Inc.'s ("DNNA")

17   motion to stay litigation during the pendency of reexamination of United States Patent

18   4,935,184 (the "'184 Patent"). The Court finds that this matter is appropriate for disposition

19   without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for January 18,

20   2008 is HEREBY VACATED. Having considered the parties' pleadings and the relevant legal

21   authority, the Court HEREBY GRANTS DNNA's motion to stay litigation.

22                                    **BACKGROUND**

23        In this action, plaintiff Jens Erik Sorensen ("Sorensen") brings a claim for patent

24   infringement of the '184 Patent. Sorensen filed this action on November 1, 2007 and served

25   DNNA on November 12, 2007. On October 11, 2007, before this lawsuit was filed, the Patent

26   and Trademark Office ("PTO") granted a request to reexamine the '184 Patent. (Declaration of

27   Kurt W. Rhode ("Rhode Decl."), Ex. C.) The PTO notified Sorensen that newly submitted prior

28   art resulted in thirteen "substantial questions of patenability" regarding the '184 Patent. (*Id.*)

*United States District Court*
*For the Northern District of California*

1    Maria DNNA now moves the Court to stay litigation in the above-captioned matter pending the

2    PTO's reexamination of the '184 Patent. The Court shall address additional facts as necessary

3    to its analysis in the remainder of this Order.

**ANALYSIS**

A.    **Legal Standards Applicable to a Motion to Stay Proceedings Pending Reexamination.**

7        The patent reexamination statute provides in pertinent part that "[a]ny person at any time

8    may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any

9    prior art cited under the provisions of section 301." 35 U.S.C. § 302. The PTO must

10   "determine whether a substantial new question of patentability affecting any claim of the patent

11   concerned is raised by the request . . . ." 35 U.S.C. § 303(a). The reexamination statute further

12   provides that "[a]ll reexamination proceedings . . . including any appeal to the Board of Patent

13   Appeals and Interferences, will be conducted with special dispatch." 35 U.S.C. § 305.

14       The determination of whether to grant a stay pending the outcome of the PTO's

15   reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix*

16   *Labs. Inc.*, 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004) (citing *Gould v. Control Laser Corp.*,

17   705 F.2d 1340, 1341 (Fed. Cir. 1983)). When ruling on such a stay, courts consider several

18   factors: (1) the stage of the litigation, including whether discovery is or will be almost

19   completed and whether the matter has been marked for trial; (2) whether a stay will unduly

20   prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify

21   the issues in question and streamline the trial, thereby reducing the burden of litigation on the

22   parties and on the court. *Id.*; *Methode Elecs., Inc. v. Infineon Techs. Corp.*, No. 99-21142, 2000

23   U.S. Dist. LEXIS 20689, at *5-6 (N.D. Cal. Aug. 7, 2000). There is a "liberal policy in favor of

24   granting motions to stay proceedings pending the outcome of USPTO reexamination or

25   reissuance proceedings." *ASCII Corp. v. STD Entertainment*, 844 F. Supp. 1378, 1381 (N.D.

26   Cal. 1994).

27

28

**United States District Court**
For the Northern District of California

2

**B.    Early Stage of the Litigation Favors a Stay.**

Here, the early stage of this litigation weighs in favor of granting a stay pending reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995) (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation); *see also ASCII Corp.*, 844 F. Supp. at 1381 (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has not even begun and DNNA has not yet responded to the complaint. The Court has not yet set any deadlines in this action regarding discovery, motions, or trial. Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics*, 33 U.S.P.Q. 2d at 2023.

**C.    A Stay Will Not Unduly Prejudice Sorensen.**

In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs.*, 2000 U.S. Dist. LEXIS 20689, at *7. Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* The delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *Pegasus Dev. Corp. v. DirecTV, Inc.*, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).

Courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs.*, 2000 U.S. Dist. LEXIS 20689, at *7. This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc.*, 983 F. Supp. 1126, 1128 (S.D. Tex. 1997) (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). Rather, another party filed the request to reexamine the '184 Patent, and the request was granted even before Sorensen filed the instant lawsuit. DNNA promptly sought to stay this action pending the reexamination proceedings. The Court finds that Sorensen has not presented any evidence of dilatory motives or shown that he would be

**United States District Court**
For the Northern District of California

3

1  unduly prejudiced or tactically disadvantaged if this Court were to grant a stay. Although

2  Sorensen presents concerns that his ability to conduct discovery may be impaired by the delay

3  in litigation, the Court finds that DNNA has submitted sufficient evidence to allay such

4  concerns. Accordingly, the Court finds that a stay will not unduly prejudice Sorensen, and thus,

5  this factor also weighs in favor of granting a stay

6

7  **D.    A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both Parties and the Court.**

8          Because the patent-in-suit is currently being reexamined, the Court finds that this patent

9  infringement action should be stayed during the pendency of the reexamination. The Court

10  finds that such a stay will simplify the issues and streamline the trial, thereby reducing the

11  burden on, and preserving the resources of both the parties and the Court.

12          Therefore, having considered the factors relevant in determining whether to grant a stay

13  pending reexamination, the Court hereby GRANTS DNNA's motion to stay all proceedings

14  pending reexamination of the '184 Patent.

15                                  **CONCLUSION**

16          For the foregoing reasons, the Court GRANTS DNNA's motion to stay pending

17  reexamination of the '184 Patent. The proceedings are stayed from the date of this Order until

18  further notice. The Court HEREBY ORDERS the parties to submit a joint status report

19  regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO

20  issues a final decision with respect to the '184 Patent, until the stay in this case is lifted.

21          **IT IS SO ORDERED.**

22

23  Dated: January 16, 2008

24                                              _____
                                                JEFFREY S. WHITE
25                                              UNITED STATES DISTRICT JUDGE

26

27

28

_United States District Court_
_For the Northern District of California_

4

# EXHIBIT "5"

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.go

### _Ex Parte_ Reexamination Filing Data - June 30, 2006

1. Total requests filed since start of ex parte reexam on 07/01/81 .....................................8084

    a.  By patent owner                                    3313   41%
    b.  By other member of public             4606   57%
    c.  By order of Commissioner              165    2%

2. Number of filings by discipline

    a.  Chemical Operation                       2496   31%
    b.  Electrical Operation                     2608   32%
    c.  Mechanical Operation                 2980   37%

3. Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 340 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4. Number known to be in litigation................................................................1895   23%

5. Determinations on requests.................................................................................7852

    a.  No. granted ................................................................. 7160 ...................91%

        (1)  By examiner                              7054
        (2)  By Director (on petition)               106

    b.  No. denied ................................................................... 692 .....................9%

        (1)  By examiner                              657
        (2)  Order vacated                         35

6.  Total examiner denials (includes denials reversed by Director).......................................763

    a.  Patent owner requester                              430      56%
    b.  Third party requester                               333      44%

7.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency           22.8  (mos.)
    b.  Median pendency            17.6  (mos.)

8.  Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.  All claims confirmed | 23% | 29% | 13% | 26% |
| b.  All claims cancelled | 7% | 12% | 19% | 10% |
| c.  Claims changes | 70% | 59% | 68% | 64% |

9.  Total ex parte reexamination certificates issued (1981 - present)...................................5433

    a.  Certificates with all claims confirmed           1410    26%
    b.  Certificates with all claims canceled            554    10%
    c.  Certificates with claims changes             3469    64%

10. Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.  Certificates _ PATENT OWNER REQUESTER.................................................2360

        (1)  All claims confirmed           543    23%
        (2)  All claims canceled           174     7%
        (3)  Claim changes              1643    70%

    b.  Certificates _ 3rd PARTY REQUESTER.......................................................................2934

        (1)  All claims confirmed           849    29%
        (2)  All claims canceled           353    12%
        (3)  Claim changes             1732    59%

    c.  Certificates _ COMM'R INITIATED REEXAM ...................................................139

        (1)  All claims confirmed            18    13%
        (2)  All claims canceled            27    19%
        (3)  Claim changes              94    68%

# EXHIBIT "6"

Westlaw.

H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL
12929 (Leg.Hist.)
**(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)**


P.L. 96-517, PATENT AND TRADEMARK LAWS
SEE PAGE 94 STAT. 3015
HOUSE REPORT (JUDICIARY COMMITTEE) NO. 96-1307(I), SEPT. 9,
1980 (TO ACCOMPANY H.R. 6933)
HOUSE REPORT (GOVERNMENT OPERATIONS COMMITTEE)
NO. 96-1307(II), SEPT. 23, 1980 (TO ACCOMPANY H.R. 6933)
CONG. RECORD VOL. 126 (1980)
DATES OF CONSIDERATION AND PASSAGE
HOUSE NOVEMBER 17, 21, 1980
SENATE NOVEMBER 20, 1980
NO SENATE REPORT WAS SUBMITTED WITH THIS LEGISLATION.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED MATERIAL. EACH
COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

HOUSE REPORT NO. 96-1307(I)
SEPT. 9, 1980
*1 **6460 THE COMMITTEE ON THE JUDICIARY TO WHOM WAS REFERRED THE BILL (H.R. 6933)
ENTITLED: 'TO AMEND THE PATENT AND TRADEMARK LAWS', HAVING CONSIDERED THE
SAME, REPORT FAVORABLY THEREON WITH AMENDMENTS AND RECOMMEND THAT THE BILL
AS AMENDED DO PASS.


*      *      *      *

STATEMENT
THE NEED FOR THE LEGISLATION
MANY ANALYSTS OF THE U.S. ECONOMY HAVE WARNED THAT THE ROOTS OF THE CURRENT
RECESSION LIE IN A LONGER TERM ECONOMIC MALAISE WHICH ARISES OUT OF A FAILURE OF
AMERICAN INDUSTRY TO KEEP PACE WITH THE INCREASED PRODUCTIVITY OF FOREIGN COM-
PETITORS. [FN1]
ACCORDING TO THE COMMITTEE FOR ECONOMIC DEVELOPMENT, 'THE SLOWING OF PRO-
DUCTIVITY IMPROVEMENT DURING THE PAST FEW YEARS PARALLELS THE DISCOURAGING
DECLINE IN THE RATE OF INVESTMENT IN PLANT AND EQUIPMENT.' [FN2] THE RATE OF IN-
VESTMENT AS A PROPORTION OF GNP HAS AVERAGED ABOUT ONE HALF THE RATE FOR
FRANCE AND GERMANY AND ABOUT ONE THIRD THE RATE FOR JAPAN. FURTHER, THE SITU-
ATION DOES NOT *2 APPEAR TO BE IMPROVING. THERE HAS BEEN AN ESPECIALLY SIGNIFIC-
ANT DECLINE IN TOTAL U.S. EXPENDITURES FOR RESEARCH AND DEVELOPMENT, AS **6461
MEASURED IN CONSTANT DOLLARS SINCE 1970. [FN3] SINCE THE PRIMARY MEANS OF IMPROV-
ING PRODUCTIVITY LIES IN THE CREATION OF NEW TECHNOLOGIES, THE DECLINE IN EX-
PENDITURES FOR RESEARCH AND DEVELOPMENT IS ESPECIALLY SIGNIFICANT TO THE
HEALTH OF THE OVERALL ECONOMY.
TESTIMONY PRESENTED TO THE SUBCOMMITTEE ON COURTS, CIVIL LIBERTIES AND THE AD-
MINISTRATION OF JUSTICE ALSO INDICATES THAT THE FEDERAL GOVERNMENT IS BEARING
AN EVER INCREASING SHARE OF THE BURDEN OF FINANCING BASIC RESEARCH AND DEVEL-
OPMENT. [FN4] THIS MEANS THAT THE EFFECTIVE COMMERCIALIZATION OF GOVERNMENT
FINANCED RESEARCH IS BECOMING AN EVER MORE IMPORTANT ISSUE FOR THOSE WHO ARE

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 96-1307(I)                                                                 Page 2
H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL
12929 (Leg.Hist.)
**(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)**


CONCERNED WITH INDUSTRIAL INNOVATION. THE PATENT POLICIES GOVERNING THE UTILIZ-
ATION OF GOVERNMENT FUNDED RESEARCH WILL BECOME EVEN MORE IMPORTANT WHEN
THE RESEARCH EXPECTED TO FLOW OUT OF RECENT CONGRESSIONAL ENACTMENTS SUCH AS
THE ENERGY SECURITY ACT OF 1980 [FN5] BEGINS TO PRODUCE USABLE NEW TECHNOLOGIES.
IT IS HIGHLY LIKELY THAT THE FUEL WHICH POWERS OUR AUTOMOBILES AND THE BOILERS
WHICH HEAT OUR HOMES WILL OWE PART OF THEIR CHEMICAL COMPOSITION OR MECHANIC-
AL OPERATION TO PATENTED RESEARCH DEVELOPED IN PART BY GOVERNMENT FUNDS. AT
THE PRESENT TIME U.S. COMPANIES DESIRING TO USE GOVERNMENT FUNDED RESEARCH TO
DEVELOP NEW PRODUCTS AND PROCESSES MUST CONFRONT A BEWILDERING ARRAY OF 26
DIFFERENT SETS OF AGENCY REGULATIONS GOVERNING THEIR RIGHTS TO USE SUCH RE-
SEARCH. THIS BUREAUCRATIC CONFUSION DISCOURAGES EFFICIENT USE OF TAXPAYER FIN-
ANCED RESEARCH AND DEVELOPMENT.

                              HISTORY OF THE BILL
THE CRISIS IN U.S. PRODUCTIVITY AND THE GOVERNMENTAL ROLE IN IT HAS NOT GONE UN-
NOTICED, HOWEVER. IN MAY OF 1978 THE PRESIDENT CALLED FOR A MAJOR POLICY REVIEW
OF INDUSTRIAL INNOVATION AS THE KEY TO INCREASED PRODUCTIVITY IN THE UNITED
STATES. THIS WHITE HOUSE CALL TO ACTION RESULTED IN THE CREATION OF AN ADVISORY
COMMITTEE OF MORE THAN 150 SENIOR REPRESENTATIVES FROM THE INDUSTRIAL, PUBLIC
INTEREST, LABOR, SCIENTIFIC, AND ACADEMIC COMMUNITIES. THE WORK OF THE ADVISORY
COMMITTEE WAS OVERSEEN BY A CABINET LEVEL COORDINATING COMMITTEE CHAIRED BY
THE SECRETARY OF COMMERCE. THE COMMITTEE STUDIED ALL THE AREAS IN WHICH FEDER-
AL GOVERNMENT POLICY IMPACTS ON PRODUCTIVITY AND INNOVATION IN THE PRIVATE
SECTOR. THESE FIELDS OF INQUIRY INCLUDED: ECONOMIC AND TRADE POLICY; ENVIRON-
MENTAL, HEALTH AND SAFETY REGULATIONS; ANTI-TRUST ENFORCEMENT; FEDERAL PRO-
CUREMENT POLICIES, AND FEDERAL PATENT AND INFORMATION POLICIES.
WHEN THE ADVISORY COMMITTEE ISSUED ITS 300 PAGE REPORT LAST YEAR, A KEY SEGMENT
CONTAINED RECOMMENDATIONS ON GOVERNMENT PATENT POLICY. THESE RECOMMENDA-
TIONS, IN TURN, WERE RECEIVED BY THE PRESIDENT, AND FORMED THE BASIS OF A MAJOR
LEGISLATIVE PROPOSAL WHICH WAS CONVEYED TO THE CONGRESS. SPECIAL EMPHASIS WAS
PLACED ON THE ROLE OF THE PATENT SYSTEM AND THE PATENT POLICY REGARDING GOV-
ERNMENT FUNDED RESEARCH IN PROMOTING INDUSTRIAL INNOVATION. THESE PATENT RE-
LATED RECOMMENDATIONS WERE FORWARDED TO THE COMMITTEE*3 **6462 ON THE JUDI-
CIARY AND ARE EMBODIED IN H.R. 6933 AND H.R. 3806.
H.R. 6933 HAS THREE MAJOR THRUSTS. FIRST, IT STRENGTHENS INVESTOR CONFIDENCE IN THE
CERTAINTY OF PATENT RIGHTS BY CREATING A SYSTEM OF ADMINISTRATIVE REEXAMINA-
TION OF DOUBTFUL PATENTS. SECONDLY, IT STRENGTHENS THE FINANCIAL RESOURCES OF
THE PATENT OFFICE TO PROVIDE FAST AND ACCURATE PROCESSING OF PATENT APPLICA-
TIONS BY REVISING THE FEE STRUCTURE OF THE OFFICE. FINALLY, THE EXISTING MELANGE
OF 26 DIFFERENT AGENCY POLICIES ON VESTING OF PATENT RIGHTS IN GOVERNMENT FUN-
DED RESEARCH IS REPLACED BY A SINGLE, UNIFORM NATIONAL POLICY DESIGNED TO CUT
DOWN ON BUREAUCRACY AND ENCOURAGE PRIVATE INDUSTRY TO UTILIZE GOVERNMENT
FUNDED INVENTIONS THROUGH THE COMMITMENT OF THE RISK CAPITAL NECESSARY TO DE-
VELOP SUCH INVENTIONS TO THE POINT OF COMMERCIAL APPLICATION.
H.R. 3806 EMBODIES ANOTHER RECOMMENDATION OF THE ADVISORY COMMITTEE AND THE
PRESIDENT. IT GRANTS JURISDICTION OVER APPEALS IN PATENT CASES TO A SINGLE COURT
OF APPEALS-- ENDING THE CURRENT LEGAL CONFUSION CREATED BY 11 DIFFERENT APPEL-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 96-1307(I)                                                                                    Page 3
H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL
12929 (Leg.Hist.)
**(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)**

LATE FORUMS, ALL GENERATING DIFFERENT INTERPRETATIONS OF THE PATENT LAW. THE
NEW COURT WILL DO A GREAT DEAL TO IMPROVE INVESTORS' CONFIDENCE IN PATENTED
TECHNOLOGY.

IN ADDITION TO THE THREE BROAD AREAS ALREADY OUTLINED, H.R. 6933 ADDRESSES THE
SPECIAL NEEDS OF UNIVERSITIES AND SMALL BUSINESSES WHEN THEY ATTEMPT TO DEAL
WITH PATENT ISSUES ARISING OUT OF GOVERNMENT CONTRACTS. BOTH OF THESE GROUPS
LACK THE RESOURCES TO COPE WITH THE BEWILDERING REGULATORY AND BUREAUCRATIC
PROBLEMS ASSOCIATED WITH TRANSFER OF PATENT RIGHTS PURSUANT TO GOVERNMENT
CONTRACTS; AND THE UNIVERSITY SECTOR IN PARTICULAR IS AN IMPORTANT LINK TO THE
PRIVATE SECTOR.

THE SUBCOMMITTEE ON COURTS, CIVIL LIBERTIES AND THE ADMINISTRATION OF JUSTICE
HELD SEVEN DAYS OF HEARINGS ON H.R. 6933 AND RELATED PATENT LAW PROPOSALS. IN
ALL, OVER THIRTY WITNESSES FROM GOVERNMENT, THE PRIVATE BAR, INDUSTRY, EDUCA-
TION, SMALL BUSINESS, AND THE JUDICIARY OFFERED TESTIMONY ON THE VARIOUS LEGIS-
LATIVE PROPOSALS BEFORE THE SUBCOMMITTEE. HEARINGS WERE FOLLOWED BY FOUR
DAYS OF MARKUP, DURING WHICH H.R. 3806, CREATING A NEW COURT OF APPEALS FOR THE
FEDERAL CIRCUIT, H.R. 6933, CONTAINING REFORMS IN PATENT POLICY AND PROCEDURES,
AND H.R. 6934, CLARIFYING THE LAW OF COPYRIGHT OF COMPUTER PROGRAMS, WERE REPOR-
TED FAVORABLY. EACH BILL WAS REPORTED UNANIMOUSLY. THE UNANIMOUS VOTES, PAR-
TICULARLY ON H.R. 6933, WERE CAST ONLY AFTER CAREFUL EXAMINATION OF THE LEGISLA-
TION IN LIGHT OF THE CRITICISMS MADE DURING THE HEARINGS AND AFTER CONSULTATION
WITH MEMBERS OF THE COMMITTEE ON SCIENCE AND TECHNOLOGY, WHICH SHARES JURIS-
DICTIONAL INTEREST. DURING THE COURSE OF MARKUP H.R. 6933 WAS AMENDED SUBSTAN-
TIALLY TO RESPOND TO CRITICISMS RAISED DURING THE HEARING.

### SUMMARY OF THE BILL

H.R. 6933, AS AMENDED, ADDRESSES FOUR MAJOR ISSUES. SECTION 1 PROVIDES FOR A SYSTEM
OF ADMINISTRATIVE REEXAMINATION OF PATENTS WITHIN THE PATENT OFFICE. THIS NEW
PROCEDURE WILL PERMIT ANY PARTY TO PETITION THE PATENT OFFICE TO REVIEW THE EF-
FICACY OF A PATENT, SUBSEQUENT TO ITS ISSUANCE, ON THE BASIS OF NEW INFORMATION
ABOUT PREEXISTING TECHNOLOGY WHICH MAY HAVE ESCAPED REVIEW AT THE TIME OF THE
INITIAL EXAMINATION OF THE PATENT APPLICATION. REEXAMINATION *4 WILL PERMIT EFFI-
CIENT RESOLUTION OF QUESTIONS ABOUT THE VALIDITY OF ISSUED PATENTS WITHOUT RE-
COURSE TO EXPENSIVE AND LENGTHY INFRINGEMENT LITIGATION. THIS, IN TURN, WILL PRO-
MOTE INDUSTRIAL INNOVATION BY ASSURING THE KIND OF CERTAINTY ABOUT PATENT
VALIDITY WHICH IS A NECESSARY INGREDIENT OF SOUND INVESTMENT DECISIONS.

THE COST INCURRED IN DEFENSIVE PATENT LITIGATION SOMETIMES REACHES $250,000 FOR
EACH PARTY, AN IMPOSSIBLE BURDEN FOR MANY SMALLER FIRMS. THE RESULT IS A
CHILLING EFFECT ON THOSE BUSINESSES AND INDEPENDENT INVENTORS WHO HAVE RE-
PEATEDLY DEMONSTRATED THEIR ABILITY TO SUCCESSFULLY INNOVATE AND DEVELOP NEW
PRODUCTS. A NEW PATENT REEXAMINATION PROCEDURE IS NEEDED TO PERMIT THE OWNER
OF A PATENT TO HAVE THE VALIDITY OF HIS PATENT TESTED IN THE PATENT OFFICE WHERE
THE MOST EXPERT OPINIONS EXIST AND AT A MUCH REDUCED COST. PATENT OFFICE REEX-
AMINATION WILL GREATLY REDUCE, IF NOT END, THE THREAT OF LEGAL COSTS BEING USED
TO 'BLACKMAIL' SUCH HOLDERS INTO ALLOWING PATENT INFRINGEMENTS OR BEING FORCED
TO LICENSE THEIR PATENTS FOR NOMINAL FEES.

THE REEXAMINATION OF ISSUED PATENTS COULD BE CONDUCTED WITH A FRACTION OF THE

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 96-1307(I)                                                                                           Page 4
H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL
12929 (Leg.Hist.)
**(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)**

TIME AND COST OF FORMAL LEGAL PROCEEDINGS AND WOULD HELP RESTORE CONFIDENCE
IN THE EFFECTIVENESS OF OUR PATENT SYSTEM.

THE BILL DOES NOT PROVIDE FOR A STAY OF COURT PROCEEDINGS. IT IS BELIEVED BY THE
COMMITTEE THAT STAY PROVISIONS ARE UNNECESSARY IN THAT SUCH POWER ALREADY
RESIDES WITH THE COURT TO PREVENT COSTLY PRETRIAL MANEUVERING WHICH **ATTEMPTS
TO CIRCUMVENT** THE **REEXAMINATION PROCEDURE.** IT IS ANTICIPATED THAT THESE MEAS-
URES PROVIDE A USEFUL AND NECESSARY ALTERNATIVE FOR CHALLENGERS AND FOR PAT-
ENT OWNERS TO TEST THE VALIDITY OF UNITED STATES PATENTS IN AN EFFICIENT AND REL-
ATIVELY INEXPENSIVE MANNER.

SECTIONS 2 THROUGH 5 OF H.R. 6933 PROVIDE FOR A NEW FEE STRUCTURE FOR THE PATENT
OFFICE. AT THE PRESENT TIME PATENT EXAMINATION FEES ARE ESTABLISHED BY STATUE,
LAST REVISED IN 1967. WHEN ENACTED, THE PRESENT FEE STRUCTURE PROVIDED REVENUES
WHICH MET 67 PERCENT OF THE COSTS OF OPERATING THE PATENT OFFICE. INFLATION HAS
NOW REDUCED THE IMPACT OF THOSE FEES TO THE POINT WHERE THEY GENERATE ONLY 27
PERCENT OF THE FUNDING NECESSARY TO THE OPERATION OF THE OFFICE.

AT THE PRESENT TIME PATENT FEES AVERAGE ABOUT $239 PER APPLICATION. [FN6]

H.R. 6933 WOULD ENTIRELY REVISE THE FEE STRUCTURE. IT GRANTS THE COMMISSIONER THE
POWER TO ESTABLISH FEES. AS INTRODUCED, THE BILL PROVIDED THAT THE FEE LEVEL
WOULD BE REVISED YEARLY TO GENERATE 60 PERCENT OF THE REVENUE NEEDED TO OPER-
ATE THE OFFICE. HOWEVER, THE SUBCOMMITTEE AMENDED THE BILL TO REDUCE THAT
LEVEL TO 50 PERCENT. THIS WAS IN RESPONSE PARTICULARLY TO CRITICISM FROM SMALL
BUSINESS AND INDIVIDUAL INVENTORS THAT THE FEES WOULD PLACE TOO GREAT A BURDEN
ON THOSE GROUPS.

IN ORDER FURTHER TO SOFTEN THE IMPACT ON SMALL BUSINESS AND IND VIDUAL INVENT-
ORS, THE FEES ARE TO BE PAID IN FOUR INSTALLMENTS OVER THE LIFE OF THE PATENT. THIS
SYSTEM, KNOWN AS MAINTENANCE FEES, IS IN USE IN MOST ADVANCED INDUSTRIAL NA-
TIONS AND HAS THE ADVANTAGE OF DEFERRING PAYMENT UNTIL THE INVENTION BEGINS TO
RETURN REVENUE TO THE INVENTOR.

**\*5 \*\*6464** SHOULD THE INVENTION PROVE TO HAVE NO COMMERCIAL VALUE, THE INVENTOR
HAS THE OPTION OF PERMITTING THE PATENT TO LAPSE, THUS AVOIDING ALL FURTHER FEES.

SECTION 6 OF H.R. 6933 PROVIDES FOR A UNIFORM POLICY GOVERNING THE DISPOSITION OF
PATENT RIGHTS IN GOVERNMENT FUNDED RESEARCH. THIS WOULD REPLACE THE 26 DIFFER-
ENT AGENCY POLICIES NOW IN EFFECT. THERE ARE TWO PATENT POLICIES PROVIDED IN THIS
SECTION. NON-PROFIT RESEARCH INSTITUTIONS AND SMALL BUSINESSES ARE GIVEN PREFER-
ENTIAL TREATMENT. THE LEGISLATION ESTABLISHES A PRESUMPTION THAT OWNERSHIP OF
ALL PATENT RIGHTS IN GOVERNMENT FUNDED RESEARCH WILL VEST IN ANY CONTRACTOR
WHO IS A NON-PROFIT RESEARCH INSTITUTION OR A SMALL BUSINESS. THIS PORTION OF H.R.
6933 SUBSTANTIALLY INCORPORATES LEGISLATION SEPARATELY INTRODUCED, H.R. 2414 (S.
414), ENTITLED THE UNIVERSITY, SMALL BUSINESS PATENT POLICY ACT.

LARGE BUSINESSES ARE GOVERNED BY A SEPARATE POLICY. THEY RECEIVE EXCLUSIVE LI-
CENSES FOR SPECIFIC USES THEY INTEND TO COMMERCIALIZE. AS WITH SMALL BUSINESS
AND UNIVERSITIES, HERE TOO THE PRESUMPTION LIES WITH THE GRANTING OF EXCLUSIVE
RIGHTS TO THE CONTRACTOR.

CRITICS OF THE BILL TESTIFIED THAT IT WOULD BE IMPOSSIBLE FOR A CONTRACTOR TO DE-
TERMINE IN GOOD FAITH HIS ABILITY TO COMMERCIALIZE IN A PARTICULAR FIELD OF USE AT
THE TIME OF DISCLOSURE OF THE INVENTION.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 96-1307(I)
Page 5

H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL
12929 (Leg.Hist.)

**(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)**

AS A RESULT AND FOR THE PURPOSES OF FOREIGN PATENT RIGHTS, THE SUBCOMMITTEE AP-
PROVED AN AMENDMENT WHICH GRANTS TEMPORARY TITLE TO A CONTRACTOR FOR UP TO
FOUR AND ONE HALF YEARS BEFORE REQUIRING HIM TO SPECIFY HIS FIELDS OF USE. THIS
PROVIDES FOR MORE FLEXIBILITY FOR THE CONTRACTOR WHILE AT THE SAME TIME PRO-
TECTING THE TAXPAYING PUBLIC BECAUSE:
1. THE GOVERNMENT, NOT THE CONTRACTOR, WILL OBTAIN OWNERSHIP OF PATENT RIGHTS
TO CONTRACT INVENTIONS.
2. THE GOVERNMENT WILL PERMIT CONTRACTORS TO OBTAIN EXCLUSIVE LICENSES BUT
ONLY FOR FIELDS OF USE IN WHICH THEY INTEND TO COMMERCIALIZE A PATENTED INVEN-
TION.
3. THE GOVERNMENT HAS THE RIGHT TO DENY THE TRANSFER OF EXCLUSIVE RIGHTS FOR
ANY FIELD OF USE WITHIN 90 DAYS OF THE CONTRACTOR'S DISCLOSURE OF A FIELD OR
FIELDS OF USE HE INTENDS TO COMMERCIALIZE.
4. PUBLIC INTEREST ANTITRUST AND NATIONAL SECURITY STANDARDS ARE TO BE APPLIED
BY THE GOVERNMENT IN MAKING SUCH DETERMINATION WHETHER TO DENY AN EXCLUSIVE
LICENSE.
FROM A CONTRACTOR POINT OF VIEW, THE AMENDMENT OFFERS MANY OF THE ADVANTAGES
OF PATENT OWNERSHIP, INCLUDING FULL TITLE ABROAD AND THE RIGHT TO SUBLICENSE DO-
MESTICALLY.
FROM AN INNOVATION POINT OF VIEW, THE REQUIREMENT THAT EXCLUSIVE LICENSES BE
LIMITED TO SPECIFIED FIELDS OF USE THAT THE CONTRACTOR INTENDS TO COMMERCIALIZE
SHOULD PREVENT SITTING ON TECHNOLOGY, AND SPUR INNOVATION.
SOME CONTRACTORS, PARTICULARLY IN THE DEFENSE AREA, WILL LOSE SOME RIGHTS
WHICH THEY PRESENTLY RECEIVE THROUGH FULL WAIVER. HOWEVER, THE OVERWHELMING
NUMBER OF CONTRACTORS WILL RECEIVE FASTER, MORE EFFICIENT TREATMENT UNDER
THESE PROVISIONS. FOR EXAMPLE, DELAYS IN ACTING ON PATENT RIGHT WAIVER REQUESTS,
WHICH NOW TAKE ON THE AVERAGE A YEAR AND A HALF IN AGENCIES LIKE THE DEPART-
MENT OF ENERGY, WILL BE ELIMINATED. CONTRACTORS WILL KNOW THEIR RIGHTS WITH
CERTAINTY WITHIN 90 DAYS OF IDENTIFYING A SPECIFIC FIELD OF USE UNDER A PATENT TO A
GOVERNMENT FINANCED INVENTION.
*6 **6465 IN DEVELOPING THE AMENDMENT TO THIS SECTION, IT SHOULD BE NOTED THAT THE
SUBCOMMITTEE WORKED CLOSELY WITH THE SCIENCE AND TECHNOLOGY COMMITTEE, AND
IT IS PARTICULARLY GRATEFUL TO MEMBERS OF THAT COMMITTEE FOR THEIR CONTRIBU-
TIONS.
FINALLY, SECTIONS 9 AND 10 OF THE BILL, AS REPORTED BY THE SUBCOMMITTEE, REFLECT
AMENDMENTS WHICH ARE DESIGNED TO RESPOND TO THE CRITICISM OF WITNESSES WHO AR-
GUED BOTH THAT THE PATENT OFFICE OUGHT TO BE INDEPENDENT OF THE DEPARTMENT OF
COMMERCE AND THAT THE PRESENT SEARCH FILES OF THE OFFICE FAIL TO EFFECTIVELY
UTILIZE MODERN COMPUTER TECHNOLOGY.

SECTION-BY-SECTION ANALYSIS
REEXAMINATION

SECTION 1 OF THE BILL WOULD ADD SEVEN NEW SECTIONS TO THE PATENT LAWS TO ESTAB-
LISH A PATENT REEXAMINATION SYSTEM. THESE SEVEN NEW SECTIONS WOULD CONSTITUTE
CHAPTER 30 OF TITLE 35 OF THE UNITED STATES CODE.

SECTION 301. CITATION OF PRIOR ART

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.